UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARL THOMAS,

        Plaintiff,

v.

U-HAUL COMPANY, *et al.*,

        Defendants.

No. 1:23-cv-21469

**OPINION**

**APPEARANCES**:
Gerald B. Baldino, III
Gerald B. Baldino, Jr.
SACCHETTA & BALDINO
24 South Broad Street
Woodbury, NJ 08096

    *On behalf of Plaintiff.*

Christopher J. Capone
FISHER & PHILLIPS LLP
430 Mountain Avenue
Suite 303
Murray Hill, NJ 07974

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion to Dismiss Plaintiff Carl Thomas's ("Plaintiff") Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant U-Haul International, Inc.[1] ("UHI"), U-Haul Co. of New Jersey, Inc. ("UH-NJ"), and Adam Elias ("Mr. Elias") (collectively "Defendants"). (ECF No. 18). The Court did not

---

[1] Plaintiff improperly plead UHI as U-Haul International, U-Haul Company, U-Haul Inc., and U-Haul and UH-NJ as U-Haul of New Jersey, Inc., and U-Haul of Mount Laurel.

hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion is **DENIED in part and GRANTED in part**.

## I.   BACKGROUND

Plaintiff owns a catering company, Hellshire Catering, based in Philadelphia, Pennsylvania. (Am. Compl., ECF No. 14, ¶ 14). In addition to running his own company, Plaintiff also performs services for other catering companies. (Am. Compl., ECF No. 14, ¶ 14). For these events, Plaintiff frequently rented trucks from Defendants UHI and UH-NJ to transport food and supplies. (Am. Compl., ECF No. 14, ¶ 16).

Plaintiff alleges the owner of One Love Catering, Ms. Balter, rented a truck for a catering event. (Am. Compl., ECF No. 14, ¶ 15). On September 25, 2021, Plaintiff returned the truck to the U-Haul location in Mount Laurel, New Jersey. (Am. Compl., ECF No. 14, ¶ 13). When Plaintiff entered the Mount Laurel U-Haul facility to return the truck, he spoke with a young, white female U-Haul employee. (Am. Compl., ECF No. 14, ¶ 17). While waiting for her to process his return, Plaintiff informed the employee that he had to leave and requested a receipt. (Am. Compl., ECF No. 14, ¶ 19).

After requesting a receipt, Plaintiff had a verbal altercation with another U-Haul employee, Defendant Elias. (Am. Compl., ECF No. 14, ¶ 20). At the time of the incident, Elias was the on-duty manager of the Mount Laurel U-Haul location. (Am. Compl., ECF No. 14, ¶ 20). During this altercation, Plaintiff asserts that Elias said, "you n***** will never be able to rent another U-Haul." (Am. Compl., ECF No. 14, ¶ 21). Plaintiff is a Black Jamaican-American. (Am. Compl., ECF No. 14, ¶ 18). Plaintiff also asserts that Elias pressed the panic button at the U-Haul location in an attempt to summon the police to the premises. (Am. Compl., ECF No. 14, ¶ 25).

Additionally, Elias placed Plaintiff on U-Haul's "Do Not Rent" list, which prevents Plaintiff from renting U-Haul trucks and vehicles in the future and "from otherwise conducting business with U-Haul thereafter." (Am. Compl., ECF No. 14, ¶ 22). After being informed he was placed on the "Do Not Rent" list, Plaintiff left the U-Haul premises. (Am. Compl., ECF No. 14, ¶ 26). The police who investigated the incident confirmed that Plaintiff was placed on the "Do Not Rent" list by Elias. (Am. Compl., ECF No. 14, ¶ 24).

Plaintiff filed an action asserting four claims: (1) unlawful discrimination in violation of The Civil Rights Act, 42 U.S.C. § 1981 ("Count One"), (2) unlawful discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12 ("Count Two"), (3) intentional infliction of emotional distress ("Count Three"), and (4) a violation of the New Jersey Civil Liability for Bias Crimes statute, N.J.S.A. § 2A:53A-21 ("Count Four").

## II.   PROCEDURAL HISTORY

On September 21, 2023, Plaintiff commenced this action in the Superior Court of New Jersey, Burlington County. (ECF No. 1). On October 25, 2023, Defendants timely removed the case to this Court, under 28 U.S.C. §§ 1441 and 1446, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1). On January 24, 2024, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 14).

On February 28, 2024, Defendants filed the present Motion to Dismiss. (ECF No. 18). Plaintiff filed an opposition (ECF No. 20), to which Defendants replied (ECF No. 21).

## III.   LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds

upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

IV. **DISCUSSION**

4

### A. Count One – Violation of 42 U.S.C. § 1981

Section 1981 prohibits racial discrimination in the "mak[ing] and enforc[ing] [of] [private and public] contracts." 42 U.S.C. § 1981(a). The statute defines the "mak[ing] and enforc[ing] [of] contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). While plaintiffs typically assert § 1981 claims in the context of employment contracts, claims may also arise in the retail context. *Carter v. Bentley Motors Inc.*, 489 F. Supp. 3d 316, 322 (D.N.J. 2020) (citing *Singh v. Wal-Mart Stores, Inc.*, No. 98-1613, 1999 WL 374184, at *1 (E.D. Pa. June 10, 1999), *aff'd*, 225 F.3d 650 (3d Cir. 2000)).

To bring a § 1981 claim, a party must allege facts sufficient to show: "(1) [he] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 797 (3d Cir. 2001); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir.2002). "A plaintiff must offer only 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of discrimination,' but need not make out a prima facie case." *Emery v. Uber Techs., Inc.*, No. 20-05156, 2021 WL 941879, at *4 (D.N.J. Mar. 12, 2021), *aff'd sub nom. Uber Driver Partner Emery v. Uber Techs. Inc.*, No. 21-1710, 2022 WL 1196700 (3d Cir. Apr. 22, 2022). A plaintiff may show intent to discriminate though "direct evidence of discrimination from statements or actions by [the defendant] suggesting racial animus." *Id.* (citing *Golod v. Bank of America Corp.*, 403 Fed. App'x 699, 702 n.2 (3d Cir. 2010)).

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so

5

long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006). The contractual relationship "need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts." *Id; see also Runyon v. McCrary*, 427 U.S. 160, 172 (1976) (holding that § 1981 covers claims when individuals "sought to enter into [a] contractual relationship," but were prevented from doing so on the basis of race).

Courts have found that claims under § 1981 can be sustained even if a current contract does not exist between the plaintiff and defendant. For example, in *Carter v. Bentley*, the plaintiff alleged that an employee of an auto dealership informed her that the dealership would not sell her a car. 489 F. Supp. 3d 316, 322-23 (D.N.J. 2020). The plaintiff had given the dealership a down payment of $100,000. *Id.* at 319. Shortly thereafter, employees of the dealership informed the plaintiff they would not sell her a car because "young black women cannot afford to pay cash for Bentley vehicles unless they are involved in illegal activity or married to a white man." *Id.* at 320. The court found this pleading sufficient to withstand a motion to dismiss as it contained sufficient allegations that the defendant discriminated against the plaintiff in her attempt to make and enforce a contract. *Id.* at 323.

While merely the deprivation of the "opportunity to contract" fails to state a claim under § 1981, Plaintiff's allegations differ from those of other cases analyzing § 1981 in the retail context which did not allege future contractual interests. *See Coles v. Ritz Carlton Residences*, 2013 WL 5842958, at *3 (E.D. Pa. Oct. 30, 2013) (dismissing a § 1981 claim because the court held the plaintiffs had not alleged there was a specific contract, but merely an "offer to contract" as they did not allege an attempt to purchase the condominium); *see also McCrea v. Saks, Inc.,* No. 00-1936, 2000 WL 1912726, at *3 (E.D. Pa. Dec. 22, 2000) (dismissing a § 1981 claim because the

6

plaintiff had not alleged the retail store refused to sell her a shirt or the defendant prevented her from purchasing the shirt, and therefore did not allege a contractual interest); *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002) (dismissing a § 1981 claim because although the retailers discriminated against him by reporting him to the police as a potential thief, the contractual relationship ended once the plaintiff completed his purchase of merchandise in the store); *Morris v. Office Max, Inc*, 89 F.3d 411, 414 (7th Cir. 1996) (granting summary judgment for defendants on a § 1981 claim because the plaintiffs alleged "prospective contractual relations" were "speculative and insufficient to state a claim under § 1981," where plaintiffs were examining other merchandise with the intent to purchase when they were detained); *Youngblood v. Hy-Vee Food Stores, Inc.* 266 F.3d 851, 854–55 (8th Cir. 2001) (granting summary judgment for defendants on a § 1981 claim because the defendant had no contractual duty after the sale of the goods was completed); *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001) (granting summary judgment for defendants on a § 1981 claim because plaintiff did not attempt to make a purchase during a ban instituted by the store following an alleged shoplifting incident. The court found the alleged contractual interest to be "too speculative").

Plaintiff sufficiently pleads a § 1981 claim at this stage. Plaintiff is a member of a racial minority; he is Black/Jamaican American, so Plaintiff meets the first element of the claim. (Am. Compl., ECF No. 14, ¶ 18). Additionally, Plaintiff meets the second element of a § 1981 claim to show discriminatory intent by alleging that Defendant Elias used a racial slur directed at the plaintiff. (Am. Compl., ECF No. 14, ¶ 21); *see Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (holding that the plaintiff sufficiently alleged discriminatory intent in a § 1981 claim by alleging single instance of defendant using racial epithet).

Though a close call, the Court finds at this stage of the litigation, the plaintiff has sufficiently alleged the third element of a § 1981 claim, that Defendants discriminated against Plaintiff in the making of a contract. Like the plaintiff in *Carter*, Plaintiff alleges an impaired future contractual interest because he alleges that placement on the "Do Not Rent" list prevents him from entering into future rental contracts which he will need for his business. (Am. Compl., ECF No. 14, ¶ 22). Plaintiff also alleges that he had frequently rented from U-Haul in the past, and the incident occurred during the return of a rental truck such that it is reasonable and not merely speculative that he intended to do so in the future. (Am. Compl., ECF No. 14, ¶¶ 16, 19). While recognizing that *Carter* had made a large down payment, here, Plaintiff's alleged past rental activity coupled with his alleged intent to continue to do so is sufficient. *See Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 773 (E.D. Pa. 2016) (denying motion to dismiss based on plaintiffs' allegations that they were prevented from purchasing items from defendants they intended to purchase on the basis of their race). Thus, Plaintiff has sufficiently pled a § 1981 claim.

### B. Count Two – Violation of NJLAD, N.J.S.A. § 10:5-12

NJLAD makes it unlawful for "any person to refuse to . . . contract with . . . any other person on the basis of race . . . of such other person." N.J.S.A. § 10:5-12(l). Subsection 12(l) of this statute covers "refusals to do business with a person based on a protected characteristic." *Axakowsky v. NFL Prods., LLC*, No. 17-4730, 2018 WL 5961923, at *8 (D.N.J. Nov. 14, 2018). While NJLAD typically covers employment discrimination, "the conduct proscribed by N.J.S.A. § 10:5-12(l) is exclusively related to non-employee relationships." *Rubin v. Chilton,* 819 A.2d 22, 25 (N.J. App. Div. 2003).

A violation of Section 12(1) "requires proof of discriminatory intent." *CPM Consulting LLC v. Capsugel US LLC*, No. 20-3114, 2021 WL 4438743, at *2 (3d Cir. Sept. 28, 2021). While

Section 12(1) covers contracts, it does not cover discrimination that occurs "during the ongoing execution of a contract." *Rowan v. Hartford Plaza Ltd.,* No. 0107-11, 2013 WL 1350095, at *10 (N.J. App. Div. 2013); *See also Naik v. 7-Eleven, Inc.,* No. 13-4578, 2015 WL 3844792, at *11 (D.N.J. Aug. 5, 2014) (dismissing plaintiff's claim because the complaint alleged the discriminatory conduct occurred during the ongoing execution of a contract); *7-Eleven, Inc. v. Sodhi,* No. 13-3715, 2016 WL 3085897, at *7 (D.N.J. May 31, 2016), *aff'd sub nom. 7 Eleven Inc v. Sodhi,* 706 F. App'x 777 (3d Cir. 2017) (holding plaintiff's NJLAD claim fails because the conduct took place during the execution of a contract.). In short, Section 12(1) focuses on the refusal to create contracts.

Section 12(1) of the NJLAD has not been analyzed outside of an employment, independent contractor, or public university context. However, this Court has found that NJLAD is a remedial statute, "which should be liberally construed to advance its beneficial purposes." *McMahon v. Univ. of Med. & Dentistry of New Jersey,* No. 11-2306, 2011 WL 5082246, at *5 (D.N.J. Oct. 26, 2011) (Chesler, J.). The goal of the statute is "nothing less than the eradication of cancer of discrimination." *Id.* (quoting *Fuchilla v. Layman,* 109 N.J. 319, 334, 537 A.2d 652 (1998)); *see also, Rubin,* 819 A.2d at 25 ("If, for example, an organization refused to enter into a contract with an architect solely because the architect was a woman, violation of N.J.S.A. § 10:5–12(l) could not be doubted.").

The complaint alleges that, due to his race, Defendant Elias placed Plaintiff on the "Do Not Rent" list. (Am. Compl., ECF No. 14, ¶ 22). Placement on this list prevents Plaintiff from contracting with U-Haul in the future. (Am. Compl., ECF No. 14, ¶ 22). Additionally, Plaintiff alleges discriminatory intent in Defendant Elias calling him a racial slur. (Am. Compl., ECF No. 14, ¶ 21). Plaintiff has sufficiently pled facts that could establish a claim of discrimination under

9

N.J.S.A. § 10-5:12(l), showing both a stated future refusal to contract with the plaintiff on the basis of race and discriminatory intent. Keeping in mind that this Court construes NJLAD liberally, and that this is a motion to dismiss, Plaintiff has sufficiently met the pleading requirements for a discrimination claim under NJLAD.

### C. Count Three – Intentional Infliction of Emotional Distress

To bring a claim of intentional infliction of emotional distress ("IIED") under New Jersey law, "a plaintiff must show that: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the conduct proximately caused plaintiff's emotional distress, and (4) the emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" *Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. App. Div. 2023) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191 (N.J. App. Div. 2011)).

The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Forsman v. Dykstra*, No. 18-0181, 2023 WL 3145165, at *6 (D.N.J. Apr. 28, 2023). "Courts refer to it as an 'elevated threshold' which is 'satisfied only in extreme cases.'" *Id.* (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191 (N.J. App. Div. 2011)). In New Jersey, courts have held that a single racial slur can be outrageous conduct sufficient to bring an IIED claim only in rare cases. *See Taylor v. Metzger*, 706 A.2d 685, 696 (N.J. 1998) (holding that a jury could reasonably determine that the single use of a racial slur by a superior officer to a subordinate employee was extreme and outrageous). The *Taylor* court recognized and relied upon the position of power held by the superior officer who uttered the racial slur in finding the conduct outrageous. *Id.* at 511-12; *see also Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 324-27 (D.N.J. 2021) (denying defendant's motion for summary judgment on an IIED claim

10

because use of racial slurs by police officers immediately following a forceful arrest was outrageous conduct based on the power dynamic between the police and civilians).

The plaintiff also must plead severe emotional distress to bring an IIED claim, which amounts to "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed by trained professionals." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. App. Div. 2003) (citing *Taylor v. Metzger*, 706 A.2d 685, 697 (N.J. 1998)). The plaintiff must plead something more than "mere allegations of 'aggravation, embarrassment, an unspecified number of headaches, and loss of sleep.'" *Id.* (quoting *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988)); *see also Krugman v. Mazie Slater Katz & Freeman, LLC*, No. A-2611-13T3, 2015 WL 1880073, at *8 (N.J. App. Div. Apr. 27, 2015) (dismissing plaintiff's claim for IIED, in part, for failure to plead how the alleged conduct had affected her life or her daily routine).

Here, Plaintiff sufficiently pleads the first and third elements of the IIED claim. Plaintiff alleges that Defendant Elias deliberately called him a racial slur and placed him on the "Do Not Rent" list therefore satisfying the first element of intentional conduct. (Am. Compl., ECF No. 14, ¶ 45). Plaintiff also pleads that this conduct proximately caused his distress, satisfying the third element of cause. (Am. Compl., ECF No. 14, ¶ 46).

However, Plaintiff does not sufficiently allege that the conduct was outrageous. A single utterance of a racial slur may be the basis for an IIED claim, depending upon the particular circumstances in which it was uttered. However, unlike the plaintiffs in *Taylor* and *Lankford*, Plaintiff and Defendants in the instant case were not affected by power dynamics like those in the cases where the court found that a racial slur was sufficient to bring an IIED claim. The relationship between a customer and retailer is not akin to and does not rise to the same level of employer-employee or police-civilian, where one side holds the power.

11

Additionally, even assuming he had sufficiently pled facts to establish the conduct was outrageous, Plaintiff does not sufficiently plead severe emotional distress. Plaintiff merely alleges "economic loss, humiliation, embarrassment, emotional distress and upset, depression, anxiety, strain on relationships, and unlawful deprivation of his federally protected rights." (Am. Compl., ECF No. 14, ¶ 48). However, Plaintiff's allegations in this regard are merely conclusory and without any supporting facts, such as a medical diagnosis.

For these reasons, Plaintiff fails to sufficiently plead an IIED claim. As such, Plaintiff cannot sustain a respondent superior claim against Defendants UHI or UHI-NJ. *See Hoffenberg v. United States*, No. 12-4833, 2013 WL 135134, at *2 (D.N.J. Jan. 8, 2013) ("Respondeat superior claims must fail where, as here, the underlying tort claims have been dismissed.").

### D. Count Four – N.J.S.A. § 2A:53A-21: Civil Cause of Action for Bias Crime Victims

N.J.S.A § 2A:53A-21 provides that "a person, acting with purpose to intimidate an individual . . . because of race . . . who engages in conduct that is an offense under the provisions of the 'New Jersey Code of Criminal Justice,' Title 2C of the New Jersey Statutes, commits a civil offense." N.J.S.A. § 2A:53A-21(a).

Plaintiff alleges that Defendants engaged in harassment in violation of N.J.S.A. § 2C:33-4, (Am. Compl., ECF No. 14, ¶ 50), which provides that a person commits harassment "if, with purpose to harass another, he makes . . . one or more communications . . . in offensively coarse language." N.J.S.A. § 2C:33-4(a). The Supreme Court of New Jersey has held that this section should be "interpreted to apply to modes of communicative harassment that intrude into an individual's 'legitimate expectation of privacy.'" *Karins v. City of Atl. City*, 152 N.J. 532, 558 (N.J. 1998) (quoting *State v. Hoffman*, 149 N.J. 564, 583 (N.J. 1997)). This subsection of the statute is aimed at the manner of the communication rather than the content of the speech. *State v.*

12

*Hoffman*, 149 N.J. 564, 583 (N.J. 1997). In *Karins*, the defendant used a racial slur towards a police officer when the officer pulled the defendant over for a suspected drunk driving incident. *Karins v. City of Atl. City*, 152 N.J. 532, 537 (N.J. 1998). The court held that although the use of the slur was "extremely offensive," the slur was not made in attempt to annoy or harass the plaintiff. *Id.* at 558.

While Plaintiff undoubtedly sufficiently alleges that Defendants used coarse language, Plaintiff's Complaint contains no allegations that in making the alleged verbal statement, that Defendants communicated or intruded his privacy in such a manner that would plausibly constitute harassment under N.J.S.A. § 2C:33-4. A such, Plaintiff has not sufficiently pled a cause of action under N.J.S.A. §2A:53A-21 because Plaintiff fails to sufficiently allege an underlying criminal offense.

While it is doubtful to the Court that amendment of the Complaint could cure this deficiency, including whether Defendants UHI and UHI-NJ can be held vicariously liable under the statute, the Court will nevertheless dismiss this claim without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED in part and GRANTED in part**. (ECF No. 18). An appropriate Order accompanies this Opinion.

_____
**CHRISTINE P. O'HEARN**
**United States District Judge**